## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT CINCINNATI

| | |
|---|---|
| **THEODORE KUHLMAN,** : | Case No. 1:20-CV-00510 |
| 6576 Sherbourne Ct. : | |
| Mason, Ohio 45040 : | **Judge** |
| : | |
| and : | |
| : | |
| : | **COMPLAINT FOR DAMAGES** |
| **CARRIE M. KUHLMAN** : | **AND JURY DEMAND** |
| 6576 Sherbourne Ct. : | |
| Mason, Ohio 45040 : | |
| : | |
| **Plaintiffs,** : | |
| vs. : | |
| : | |
| **MARY CAROLE MCDONNELL** : | |
| 3900 W. Alameda Avenue, Ste. 800 : | |
| Burbank, CA 91505-4316 : | |
| : | |
| Serve also: : | |
| : | |
| **MARY CAROLE MCDONNELL** : | |
| 912 E. Briarwood Cir. S. Centennial, : | |
| CO 80122-5205 : | |
| : | |
| and : | |
| : | |
| **BELLUM ENTERTAINMENT, LLC** : | |
| 3900 W. Alameda Avenue, Ste. 800 : | |
| Burbank, CA 91505-4316 : | |
| : | |
| Serve Also: : | |
| : | |
| **MARY CAROLE MCDONNELL** : | |
| **Statutory Agent** : | |
| 3900 W. Alameda Avenue, Ste. 800 : | |
| Burbank, CA 91505-4316 : | |
| | |
| **Defendants.** | |

For their Complaint against Defendants Mary Carole McDonnell ("McDonnell") and Bellum Entertainment, LLC ("Bellum"), Plaintiffs Theodore "Ted" Kuhlman ("Ted") and Carrie M. Kuhlman ("Carrie") (collectively, the "Kuhlmans") state as follows:

1. Scam artist McDonnell defrauded the Kuhlmans out of over $2 million dollars by misrepresenting herself as the beneficiary of two trusts worth hundreds of millions of dollars and soliciting purportedly risk-free investments secured by the assets of these trusts.

## PARTIES, JURISDICTION, VENUE

2. Plaintiffs Theodore "Ted" Kuhlman and Carrie M. Kuhlman are a married couple, residing at 6576 Sherbourne Ct., Mason, Ohio 45040 in Warren County, Ohio.

3. Defendant Mary Carole McDonnell ("McDonnell") is a California resident residing at 3900 W. Alameda Avenue, Ste. 800 Burbank, CA 91505-4316.

4. Upon information and belief, McDonnell also maintains an address in Colorado at 912 E. Briarwood Cir. S. Centennial, CO 80122-5205.

5. Defendant Bellum Entertainment, LLC ("Bellum") is a California limited liability company, with its principal place of business at 3900 W. Alameda Avenue, Ste. 800 Burbank, CA 91505-4316.

6. The Statutory Agent for Bellum is McDonnell at 3900 W. Alameda Avenue, Ste. 800 Burbank, CA 91505-4316.

7. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332, because there is complete diversity between the parties, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

8. Venue is proper in this Court because a substantial amount of the plaintiff's loss occurred in Warren County, Ohio.

## ALLEGATIONS

## THE INITIAL FRAUD

9. On January 22, 2016, an agent of McDonnell's contacted Ted with an opportunity to make a short term investment secured by the Mary Carole McDonnell Trust - a family trust purportedly worth hundreds of millions of dollars.

10. After several phone calls and emails with McDonnell herself to learn about the investment opportunity and the related trusts, on January 24, 2016, McDonnell wrote to the Kuhlmans:

> The trust moved over $2.5m of my funds so your position is set. The two wires this week should be sent in the AM so, if possible, I can do same day turnaround to the family trust. Here are my wiring instructions:
>
> The Mary Carole McDonnell Trust
> Comerica Bank
> Routing #: 121137522
> Account #: 800 206 8099
>
> Just send a notification email when the wire is sent tomorrow and Tuesday. In the meantime will get the draft of your document sometime tomorrow and will forward for any comments. Final original of document fedexed to you after receipt of funds. If any questions, let me know. Many thanks.

11. On January 25, 2016, McDonnell emailed the Kuhlmans an unexecuted version of the promissory note, the executed and notarized version of which is attached here as Exhibit A (the "Note").

12. McDonnell's email message accompanying the Note stated on January 25, 2016, "The family trust guarantees it … so all around you are covered."

13. The Note provides for an amount equal to the principal of $2,500,000 and the interest of $750,000 to be paid to the Kuhlmans on September 26, 2016.

14. Per the Note, the amount due is "secured by the assets of the McDonnell Family Trust as well as the Mary Carole McDonnell Trust, which includes Bellum Entertainment."

15. The Note provides further that "late payment shall bear additional interest at the rate of 5% per annum until such payment is paid in full."

16. The Note also provides, "Neither the Holder, nor Lender shall by any act, delay omission or otherwise be deemed to have waived any of its rights or remedies under this Note and no waiver shall be valid unless in writing and signed by the Holder or Lender, as applicable."

17. The Kuhlmans sent an initial wire of $30,000 on January 25, 2016, to McDonnell.

18. In response to Ted Kuhlman's request for additional information relating to the trusts, on January 26, 2016, McDonnell sent an email ("January 26 Email") to the Kuhlmans stating the following:

> This is highly confidential so please do not forward. I was setting up a credit line for Bellum (my company) at Suntrust and this was the verification to the bank. I put substantial funds in the private banking division of Suntrust personally as well, but it was too difficult dealing with a bank with no Los Angeles branches, so have now moved everything to Comerica and Northern Trust. Feel free to call me with any questions. Please confirm receipt of this, read and destroy. As I said, my net worth is now far greater than stated in this letter.

19. McDonnell attached a PDF of a letter to the January 26 Email from Matthew Richardson, an attorney at Sheppard Mullin in Los Angeles ("Sheppard Mullin Letter"). The Sheppard Mullin Letter states, "Ms. McDonnell is the beneficiary of an irrevocable trust established by her parents . . . the value of which is well in excess of $400 million, of which Ms. McDonnell's share exceeds $80 million. " The Sheppard Mullin Letter further provides that "the trustees are prohibited from disclosing any information or documentation relating to the trust pursuant to a court order issued after the kidnap and murder of Ms. McDonnell's sister Marilyn Holly McDonnell, at age 11."

20. One day after receiving the Sheppard Mullin Letter, on January 27, 2016, the Kuhlmans sent a wire of $2,470,000 to McDonnell.

21. At the time McDonnell solicited this investment from the Kuhlmans, she was not the beneficiary of any trust worth hundreds of millions of dollars.

## THE FRAUD CONTINUES

22. In September of 2016, McDonnell asked Ted to extend the maturity date of the Note until September of 2017, because the unexpected death of her brother purportedly impacted her ability to obtain funds from the Mary Carole McDonnell Trust. In exchange for the extended maturity date, McDonnell promised an additional interest payment of $750,000.

23. The Kuhlmans agreed to the extension with the understanding that the initial interest of $750,000 would still be paid on September 26, 2016.

24. The Kuhlmans received no payment on September 26, 2016.

25. McDonnell's misrepresentation concerning the effect the death of McDonnell's brother had upon McDonnell's ability to make payments under the Note prevented the Kuhlmans from discovering that McDonnell, in fact, had no access to significant resources.

26. In January of 2017, McDonnell sent the Kuhlmans a written modification of the Note extending the maturity date to October 31, 2017, and stated that the Kuhlmans would receive payment at that time.

27. No payment was made in October of 2017.

28. Between October of 2017 and February of 2018, McDonnell repeatedly told the Kuhlmans via email and text message that payment was imminent.

29. On February 5, 2018, McDonnell wired the Kuhlmans $250,000, with a promise that payment would be made in full by the end of February 2018.

30. Upon information and belief, McDonnell made this $250,000 payment with the knowledge she would not be making additional payments in February.

5

31. On March 20, 2018, McDonnell emailed the Kuhlmans stating that payment was delayed because her attorney, Barry K. Rothman, died and that the funds were in Mr. Rothman's trust account. McDonnell also stated that an executor would have to be hired before the funds could be paid.

32. Upon information and belief, McDonnell misrepresented the impact her attorney's death had upon McDonnell's ability to access funds to make payments on the Note.

33. On March 21, 2018, Gordon J. Zuiderweg ("Attorney Zuiderweg"), a licensed California attorney, emailed the Kuhlmans at McDonnell's direction, stating that "I am contacting you on behalf of the McDonnell Family Trust and the Mary Carole McDonnell Trust. I understand that the trust was to wire funds to you this month. The wire transfer will have to be delayed up to 30 days due to the recent death of the trust attorney, Barry K. Rothman, who did not initiate and approve the transaction prior to his passing. The administrator, to be appointed, will have to set up protocols for wires as the trust closes you out. Mary Carole [McDonnell] has stressed to me that this is a priority. Thank you for your patience."

34. On May 24, 2018, after several emails from McDonnell making excuses for the wire delays, the Kuhlmans received the following email from a different licensed California attorney, Timothy V. Milner ("Attorney Milner"), who sent an email at McDonnell's direction stating "We have been informed that wire confirmation of available funds is imminent. We will forward same when received, and we thank you for your patience until this is resolved."

35. The misrepresentations concerning the impact of the death of her attorney had on the payment and the misrepresentations by McDonnell through Attorney Zuiderweg and Attorney Milner delayed the Kuhlmans from uncovering the fraud.

36. McDonnell and Attorney Milner repeatedly informed the Kuhlmans through email that payment was imminent throughout the second half of 2018.

37. In January of 2019, McDonnell wired the Kuhlmans $15,000.

38. After sending the wire in January, McDonnell sent the Kuhlmans a schedule of wires setting forth the timing and amounts through which $1.5 Million in wires would be sent to the Kuhlmans.

39. McDonnell did not intend to make these scheduled payments, and instead made these misrepresentations to prevent the Kuhlmans from uncovering the fraud.

40. In April of 2019, McDonnell wired the Kuhlmans $15,000 with additional promises to pay.

41. The Kuhlmans have received periodic emails from McDonnell with so-called "updates" on payment.

42. McDonnell emailed the Kuhlmans on April 24, 2020, stating "Next week I should hear on date of final distribution. I am hoping it will be early May but have no confirmation yet of that."

43. Most recently, McDonnell emailed the Kuhlmans on May 1, 2020, stating "I have a call into the attorney and waiting for callback on distribution date."

44. Pursuant to the Note, the Kuhlmans wired McDonnell $2,500,000 in an exchange for a promise to be paid $3,250,000 on September 26, 2016.

45. As of the date of this complaint, McDonnell has paid the Kuhlmans $280,000.

## COUNT I
### Breach of the Promissory Note

46. The Kuhlmans entered into a promissory note with McDonnell, secured, in part, by the assets of Bellum.

47. By failing to make the payment due on September 26, 2016, McDonnell breached the Note.

48. The terms of the Note provide that the Kuhlmans are due the original payment and interest of $3,250,000 and an additional five percent interest on the outstanding principal and balance through the date of payment.

49. To date, McDonnell has paid the Kuhlmans $280,000 under the Note.

## COUNT II
### Fraud in the Sale of Securities in Violation of Section 10(b) of the Securities Exchange Act and Rule 10b-5 thereunder

50. McDonnell made untrue statements of a material fact by representing that she had access to a trust containing hundreds of millions of dollars-worth of assets and by executing a Note securing repayment through the assets of these trusts.

51. McDonnell caused her agents, including licensed California attorneys, to verify her untrue statements of material fact and to continue making untrue statements concerning when payment would be made.

52. McDonnell, through her own communications and through the communications of her agents, prevented the Kuhlmans from discovering the fraud by continually misrepresenting to the Kuhlmans that the McDonnell was in fact the beneficiary of fictional trusts and that the payments from the trusts was imminent.

8

53. By relying on these misrepresentations, the Kuhlmans were defrauded of over $2,000,000

### COUNT III
### Fraud in the Sale of Securities in Violation of Ohio Revised Code Section 1707

54. McDonnell made untrue statements of a material fact to the Kuhlmans by representing that she had access to a trust containing hundreds of millions of dollars-worth of assets and by executing a Note securing repayment through the assets of these trusts.

55. McDonnell caused her agents, including licensed California attorneys, to verify her untrue statements of material fact and to continue making untrue statements concerning when payment would be made.

56. McDonnell, through her own communications and through the communications of her agents, prevented the Kuhlmans from discovering the fraud by continually misrepresenting to the Kuhlmans that the McDonnell was in fact the beneficiary of fictional trusts and that the payments from the trusts was imminent.

57. By relying on these misrepresentations, the Kuhlmans were defrauded of over $2,000,000

### COUNT IV
### Fraud

58. On January 24, 2016, via an email to Ted Kuhlman, McDonnell represented to the Kuhlmans that she was the beneficiary of family trusts worth hundreds of millions of dollars and any loan to her would be secured by the trust's assets.

59. On January 25, 2016, McDonnell forwarded the Note to the Kuhlman's which alleged to be secured by two separate family trusts.

9

60. On January 26, 2016, McDonnell emailed a letter from a California attorney stating that McDonnell was the beneficiary worth two family trusts worth hundreds of millions of dollars in assets and that Ms. McDonnell's portions of those trusts were $80 million.

61. On January 26, 2016, McDonnell informed the Kuhlmans that the letter underestimated McDonnell's net worth.

62. The Kuhlmans, relying on the above representations by McDonnell, made McDonnell a loan of $2,500,000 in exchange for the Note.

63. McDonnell is not the beneficiary of any family trust worth hundreds of millions of dollars, rendering the Kuhlmans loan entirely unsecured.

64. McDonnell does not otherwise have access to the millions of dollars that would be necessary to satisfy the amount due the Kuhlmans under the Note.

65. McDonnell continued to make misrepresentations concerning her access to money to pay the amount due under the Note, including by causing licensed California attorneys in 2018 to contact the Kuhlmans directly informing them that the amount due under the Notes would be paid.

66. These repeated misrepresentations prevented the Kuhlmans from discovering the fraud.

67. By relying on these misrepresentations, the Kuhlmans were defrauded of over $2,000,000.

**WHEREFORE, the Kuhlmans demand:**

1) An award of damages, as more fully described above, greater than $75,000, but to be determined at trial;

2) An award of punitive damages;

3)       An award of attorney's fees and costs; and

4)       Such other and further relief as justice requires.

## JURY DEMAND

The Kuhlmans hereby demand a jury trial upon all issues so triable.

Respectfully submitted,

/s/Steven P. Goodin _____

*Of Counsel*:

GRAYDON HEAD & RITCHEY, LLP
312 Walnut Street, Suite 1800
Cincinnati, OH 45202
Phone: (513) 621-6464
Fax: (513) 651-3836

Steven P. Goodin (0071713)
Kellie A. Kulka (0095749)
GRAYDON HEAD & RITCHEY LLP
312 Walnut Street, Suite 1800
Cincinnati, OH 45202
Phone: (513) 629-2845
Fax: (513) 651-3836
Email: sgoodin@graydon.law
*Attorneys for Plaintiffs*

10047750.5