# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

**THEODORE KUHLMAN, et al.,**

      **Plaintiffs,**

                        **Case No. 1:20-cv-510**

      **v.**                   **JUDGE DOUGLAS R. COLE**

**MARY CAROLE MCDONNELL, et al.,**

      **Defendants.**

## OPINION AND ORDER

This cause is before the Court on two motions for default judgment by Plaintiffs Theodore Kuhlman and Carrie M. Kuhlman (the "Kuhlmans") (Docs. 24 and 25). For the reasons that follow, the Court **GRANTS** the Kuhlmans' Motion for Default Judgment against Mary Carole McDonnell (Doc. 24) in the amount of $4,465,255.38. But the Court **DENIES WITHOUT PREJUDICE** the Kuhlmans' Motion for Default Judgment against Bellum Entertainment, LLC ("Bellum") (Doc. 25).

## BACKGROUND[1]

Mary Carole McDonnell scammed the Kuhlmans out of over two million dollars. (*See* Compl., Doc. 1, #2). She did so in part by representing herself as a wealthy heiress who had access to the assets of a valuable family trust. (*Id.*).

---

[1] When considering a motion for a default judgment, the Court accepts as true all well-pleaded allegations except those relating to the amount of damages. *See In re Cook*, 342 B.R. 384 (Table), 2006 WL 908600, at *3 (B.A.P. 6th Cir Apr. 3, 2006). Accordingly, the Court's summary of the factual background rests on the allegations in the Kuhlmans' Complaint (Doc. 1).

More specifically, McDonnell induced the Kuhlmans to lend her $2.5 million pursuant to a promissory note she provided in late January 2016. (*See id.* at #4). Under the terms of the note, McDonnell was to pay the Kuhlmans back, plus $750,000 interest, by September 2016. (*Id.* at #3). Moreover, McDonnell's obligation was to be "secured by the assets of the … Mary Carole McDonnell Trust, which includes Bellum Entertainment." (*Id.*). That trust was supposedly worth hundreds of millions of dollars. (*Id.*). Bellum is a California LLC. (*See id.* at #2). The promissory note also selects California law as the governing law. (Promissory Note, Ex. A, Doc. 1-1, #13).

But as the repayment date approached, McDonnell asked for an extension of time until September 2017. (Compl., Doc. 1, #5). In exchange, McDonnell would provide an additional interest payment of $750,000. (*Id.*). The Kuhlmans agreed. (*Id.*).

McDonnell has never paid the full amount she owes the Kuhlmans. On February 5, 2018, McDonnell did make a $250,000 payment to the Kuhlmans. (*Id.*). McDonnell also made two payments of $15,000 each in early 2019. (*Id.* at #7). But McDonell has made no other payments. Thus, McDonnell has paid the Kuhlmans a total of $280,000. (*Id.*).

The Kuhlmans filed their Complaint (Doc. 1) on July 1, 2020. The Kuhlmans named both McDonnell and Bellum as defendants. They asserted various causes of action including breach of the promissory note, securities fraud under federal and Ohio statutes, and common law fraud. (*Id.* at #8–10).

2

The Kuhlmans also made numerous attempts to serve both defendants. They were able to serve Bellum on December 15, 2020. (*See* Summons Returned Executed, Doc. 14). But Bellum never answered or otherwise responded to the Kuhlmans' Complaint (Doc. 1). The Kuhlmans also served McDonnell via email on February 1, 2021, pursuant to the Court's previous Opinion and Order (Doc. 17) permitting them to use this means. (*See* Aff. of Serv. for Summons and Compl. by Email, Doc. 20, #100). McDonnell likewise never answered or otherwise responded to the Kuhlmans' Complaint (Doc. 1).

On April 27, 2021, the Kuhlmans applied for entry of default against both McDonnell and Bellum. (*See* Doc. 21). The Clerk entered default against McDonnell on April 28, 2021 (*see* Doc. 22), and against Bellum on May 7, 2021 (*see* Doc. 23).

On May 19, 2021, the Kuhlmans filed the instant Motions for Default Judgment against McDonnell and Bellum. (*See* Docs. 24, 25). They ask the Court for a judgment for $4,465,255.38 against both defendants.[2] (Mot. for Default J. against McDonnell, Doc. 24, #131; Mot. for Default J. against Bellum, Doc. 25, #144). The Court heard argument from the Kuhlmans' counsel and testimony from Theodore Kuhlman on February 8, 2022. The matter is now before the Court.

## LEGAL STANDARD

Federal Rule of Civil Procedure 55 provides for default judgments. A plaintiff seeking entry of default against a defendant must first show, "by affidavit or

---

[2] The Motions also include a request for post-judgment interest at the statutory rate and attorney's fees and costs incurred in collecting the judgment. (*See* Mot. for Default J. against McDonnell, Doc. 24, #131; Mot. for Default J. against Bellum, #144). At the hearing, though, the Kuhlmans clarified that they are not seeking any amounts beyond the $4,465,255.38 sum.

otherwise," that the defendant "has failed to plead or otherwise defend." *See* Fed. R. Civ. P. 55(a). Upon such showing, the clerk must enter default. *Id.* Next, the plaintiff must apply to the court for a default judgment, except in cases where the claim "is for a sum certain or a sum that can be made certain by computation." *See* Fed. R. Civ. P. 55(b). A court deciding whether to grant a motion for a default judgment should satisfy itself that the facts in the Complaint state a claim for relief against the defendant. *See Harrison v. Bailey*, 107 F.3d 870 (Table), 1997 WL 49955, at *1 (6th Cir. Feb. 6, 1997) ("Default judgments would not have been proper due to the failure to state a claim against these defendants."). A court also must have both subject matter jurisdiction over the action and personal jurisdiction over any defendant against whom it grants a default judgment. *See Am. Clothing Express, Inc. v. Cloudflare, Inc.*, No. 2:20-cv-2007, 2022 WL 256337, at *1 (W.D. Tenn. Jan. 26, 2022).

## LAW AND ANALYSIS

The Kuhlmans move separately for default judgments against each of McDonnell and Bellum. (*See* Docs. 24, 25). The Court discusses each Motion in turn.

First, the Court concludes that the Kuhlmans have satisfied the standard for a default judgment against McDonnell. McDonnell failed to plead or otherwise defend this action despite the Kuhlmans' service by email on February 1, 2021, and various previous attempts at service. *See* Fed. R. Civ. P. 55(a).

Moreover, the Court has subject matter jurisdiction, at least through diversity jurisdiction. That is because it appears that (1) McDonnell is a citizen of California, (2) the Kuhlmans are Ohio citizens, and (3) the amount in controversy certainly

exceeds $75,000. The Court also finds, based on the allegations in the Complaint and the testimony that Mr. Kuhlman provided, that it has personal jurisdiction over McDonnell. It appears McDonnell contacted the Kuhlmans, in Ohio, to negotiate the terms of the promissory note, and that she reasonably would have understood that the harm arising from her failure to pay that note would occur in this State. That suffices under both the Ohio long-arm statute and the Due Process Clause of the Constitution. *See Chulsky v. Golden Corral Corp.*, Case No. 1:19-cv-875, 2022 WL 293340, at *13 (S.D. Ohio Feb. 1, 2022) ("Courts have long found the Due Process Clause sufficiently flexible to permit suits against defendants who commit torts remotely with the aid of new technology.") (citation and internal quotation marks omitted).

Having concluded that it has jurisdiction over this matter and this defendant, the Court also finds that the Kuhlmans have stated a claim for relief against McDonnell. For example, they have stated a claim that Kuhlman has breached the promissory note. Under California law (which the promissory note provides will govern), "the elements of a cause of action for breach of contract are (1) the existence of a contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis West Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (Cal. 2011). Here, the Kuhlmans have alleged that McDonnell entered a contract with them under which they performed by sending McDonell $2.5 million, yet McDonnell failed to pay them back with interest as required. These allegations satisfy the elements of breach of contract with respect to

both the original promissory note, and the September 2016 reformulation thereof, pursuant to which McDonnell would make an additional $750,000 interest payment. (*See* Compl., Doc. 1, #5).

Accordingly, the Kuhlmans are entitled to a default judgment against McDonnell on (at least) their claim for breach of contract. Because the Court can award them the full scope of the relief they seek under that claim, it need not, and does not, consider their other theories of liability.

Separately, the Court determines that $4,465,255.38 is an appropriate amount of damages. This figure comprises the $2.5 million promissory note principal, plus the original $750,000 interest, plus the additional $750,000 interest for the September 2016 reformulation, less the $280,000 that McDonnell paid the Kuhlmans, plus prejudgment interest at an annual rate of 5% in the amount of $712,705.48,[3] plus $32,549.90 in attorney's fees and costs. (*See* Mot. for Default J. against McDonnell, Doc. 24, #131).

Accordingly, the Court **GRANTS** the Kuhlmans' Motion for Default Judgment against McDonnell (Doc. 24) in the amount of $4,465,255.38.

Turning to the Motion for Default Judgment against Bellum (Doc. 25), the Court concludes that the Kuhlmans have not stated a claim for relief against Bellum. The factual allegations in the Complaint (Doc. 1) refer exclusively to actions by

---

[3] Counsel specified at the hearing that the prejudgment interest was calculated from the extended due date under the reformulated promissory note through the date on which the motion for default judgment was filed. Counsel did not provide an updated prejudgment interest through the date of the hearing, nor did counsel otherwise request an amendment to the figure to address that additional period of time.

McDonnell, not Bellum. Moreover, Bellum was not a party to either promissory note, as the Kuhlmans' counsel admitted at the hearing. (*See also* Promissory Note, Compl. Ex. A, Doc. 1-1, #13). And the Kuhlmans do not allege or argue that McDonnell took the actions that give rise to their claim in her capacity as Bellum's agent. In fact, at the hearing, Theodore Kuhlman testified that he did *not* understand McDonnell to be acting on behalf of Bellum at the time when she provided the promissory note pursuant to which the Kuhlmans lent her $2.5 million.

This paucity of allegations regarding Bellum creates two problems. First, nothing in the Complaint (Doc. 1) suggests that this Court has personal jurisdiction over Bellum. *See McCoy v. Ranch*, Case No. 1:19-cv-126, 2021 WL 3187830, at *2 (S.D. Ohio July 28, 2021) ("The plaintiff bears the burden of establishing personal jurisdiction"). Bellum is a California LLC, and the Complaint (Doc. 1) does not allege that Bellum took any acts in or directed toward Ohio that would subject it to specific jurisdiction here. *See, e.g.*, *Glassman, Edwards, Wade & Wyatt, P.C. v. Wolf, Haldenstein Adler Freeman & Herz, LLP*, 601 F. Supp. 2d 991, 1003 (W.D. Tenn. 2009) ("Specific jurisdiction arises when the defendant has sufficient minimum contacts that arise from or are related to the cause of action.") (citation omitted).

Second, the factual allegations in the Complaint (Doc. 1) also fail to state a claim that Bellum is liable for McDonnell's actions. The only allegation that arguably concerns Bellum's liability is that the promissory note was ostensibly secured by a trust that "include[d]" Bellum Entertainment. (*See* Compl., Doc. 1, at #3 (quoting Promissory Note, Compl. Ex. A, Doc. 1-1, #12)). But at the hearing, Theodore

7

Kuhlman testified that he did not understand that to mean that Bellum was liable on the note. Rather, the Kuhlmans' counsel explained that their theory of liability depends on the alleged fact that McDonnell subsequently comingled her personal assets with those of Bellum.

There are a couple of problems with that. First, the Complaint (Doc. 1) does not contain any allegations about comingling assets. Again, the closest it comes is that the promissory note said that the Mary Carole McDonnell Trust "includes" Bellum. (*See id.* at #3). But, as their counsel clarified at the hearing, the Kuhlmans now strongly suspect that the Mary Carole McDonnell Trust does not even exist and may never have existed. Accordingly, the allegation that the (non-existent) trust included Bellum among its assets does little to plausibly allege that McDonnell comingled her personal assets with those of Bellum, which seems an entirely different inquiry.

Second, and relatedly, even if such commingling occurred, that does not automatically lead to direct liability for Bellum on the judgment here. The Kuhlmans appear to base their request for direct enforceability against Bellum on a theory known as "reverse piercing." While that theory appears to be available, in certain circumstances, against an LLC under California law, invoking it requires more than mere comingling of assets. *See Curci Invs., LLC v. Baldwin*, 14 Cal. App. 5th 214, 224 (Cal. Ct. App. 2017). As the court explained in *Curci*, while California law does not categorically prohibit reverse piercing against an LLC, a court considering reverse piercing must "at minimum … evaluate the same factors as are employed in a

traditional veil piercing case, as well as whether [the plaintiff] has any plain, speedy, and adequate remedy at law." *Id.* (citing *Sonora Diamond Corp. v. Superior Ct.*, 83 Cal. App. 4th 523, 538 (Cal. Ct. App. 2000)). In turn, the two "traditional" conditions for piercing the corporate veil under California law are (1) "such a unity of interest and ownership between the [LLC] and its equitable owner that the separate personalities of the [LLC] and the shareholder do not in reality exist," and (2) "an inequitable result if the acts in question are treated as those of the [LLC] alone." *Sonora Diamond Corp.*, 83 Cal. App. 4th at 538.

Mr. Kuhlman may have satisfied the unity prong through his testimony at the hearing (if barely), but the Court is not satisfied that the Kuhlmans have adequately addressed what "inequitable result" would follow in the absence of reverse piercing, nor have they established that the remedy the Court offers here (a judgment against McDonnell) is not a plain, speedy, and adequate remedy at law.

For these reasons, the Court **DENIES** the Kuhlmans' Motion for Default Judgment against Bellum (Doc. 25), but the denial is **WITHOUT PREJUDICE**. If the Kuhlmans wish to obtain a judgment against Bellum, they must present sufficient evidence to show that (1) this Court has personal jurisdiction over Bellum, and (2) the relationship between Bellum and McDonnell meets the standard for reverse veil-piercing under California law.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Kuhlmans' Motion for Default Judgment against McDonnell (Doc. 24) and **DIRECTS** the Clerk to enter

judgment against McDonnell for $4,465,255.38. But the Court **DENIES WITHOUT PREJUDICE** the Kuhlmans' Motion for Default Judgment against Bellum (Doc. 25).

      **SO ORDERED.**

February 10, 2022
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**